

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Fred R. Donohoo, First Assistant
State Auditor and Efficiency Expert
Austin, Texas

Dear Sir:

Opinion No. O-3581.

Re: Concerning authority of
First Assistant State
Auditor during period
of time when there is
no duly qualified State
Auditor

In your letter of April 8, 1941, you request our
opinion in response to the following questions:

"Does the First Assistant State Auditor
and Efficiency Expert have authority to accept
or reject applications for aid from the Rural
Aid Fund as provided in Section 17 of House
Bill 933, Acts of the Forty-sixth Legislature?

"Does the First Assistant State Auditor
and Efficiency Expert have authority to com-
plete audits that were in process prior to the
rejection by the Senate of Mr. Tom C. King as
State Auditor and Efficiency Expert; if so, may
he approve expense accounts of employees in
connection with such audits?

"Does the First Assistant State Auditor
and Efficiency Expert have authority to trans-
act the regular business of the department,
such as making audits of State departments and
institutions?"

We will dispose of your second question first. Em-
ployees' expense accounts are required to be approved by Article
4355, Revised Civil Statutes. It does not require that claims

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

and accounts must necessarily bear the signature of the head of the department. Such approval may also be endorsed on such claims or account by some "other person responsible for incurring the expenditure".

In your letter of March 19, 1941, you gave us the following information concerning departmental practice with respect to the duties of the First Assistant in the State Auditor's office:

"I am advised that the First Assistant's duties have always been supervising of audits and handling the staff of auditors and such other detail as has been specifically assigned.

"The First Assistant has heretofore never had any duty of office administration other than the supervision and preparation of audit reports.

"Strictly administrative duties including the administration of the First Assistant's position have been handled personally by the State Auditor and Efficiency Expert."

We do not believe the duties thus delegated to and performed by the First Assistant transcended the bounds of propriety or legality in the least. Under the authorities below cited these duties are property performable by an assistant. It furthermore appears that you may have assigned various employees to the duties being performed by them as set out in your second question and that you are therefore responsible for the expenditures represented by such expense accounts. If you accept such responsibility by signing your name to the accounts the Comptroller may issue warrants in payment thereof. Both parts of your second question are answered in the affirmative.

Section 17 of H. B. 933, 46th Legislature, reads:

"The State Auditor's office is hereby directed to audit all applications for aid after same have been passed on by the Director of Equalization and when such application has been approved by said Director, it shall then be the duty of the

State Auditor to approve, or reject such appli-
cation. Whenever there is a difference between
the State Auditor and the Department of Educa-
tion, the Joint Legislative Advisory Committee
shall adjust same on the request of either Depart-
ment."

As pointed out in our Opinion No. 0-3287, the assist-
ants and other employees in the Auditor's office are appointed
by the Governor and their continuing to perform the usual
duties of their positions under the direction of the First
Assistant since Mr. King's rejection by the Senate has been
proper, in the absence of termination by the Governor. It
is the duty of the personnel of the office to proceed with
the making of the audits mentioned in Section 17 above. But,
the question of whether the First Assistant may officially
act upon, that is, approve or reject these applications,
presents a different problem. We have reached the conclusion
that the First Assistant may not perform this function.

You advise us verbally that you have never taken
the oath of office nor made an official bond. Indeed, no
statute provides that the First Assistant shall do so. The
only authority for the appointment of assistants in the Aud-
itor's office is found in Article 4413a-6, Vernon's Annotated
Civil Statutes, reading as follows:

"In the event said Auditor shall find it
necessary to have assistance in the discharge of
the duties herein imposed upon him, he may apply
to the Governor for such assistance and the
Governor is hereby authorized, in his discretion,
to appoint such assistant or assistants, includ-
ing stenographic and clerical assistance, as he
may consider necessary, in order to accomplish
the purposes of this Act."

The General Departmental Appropriation Bill (S. B.
427, p. 26, Vol. 2, Acts 46th Leg.) carries an appropriation
of $3600.00 per year for the "First Assistant State Auditor".
That is the only place the First Assistant is mentioned by
name in any statute. However, you advise that it has long
been the practice in the Auditor's Department for one of the
Assistants to be designated as First Assistant. But, no
statute anywhere prescribes or defines his duties.

Hon. Fred R. Donohoo, First Assistant, Page 4

From the opinion of the Court of Criminal Appeals
in Maill vs. State, 129 S. W. 630, we quote:

"There seems to be a distinction recognized
by all authorities, and it will be found in every
standard dictionary, between the word 'assistant'
and the word 'deputy'. They are not recognized
as synonymous terms. The word 'assistant' is univer-
sally defined as one who aids, helps, or assists,
while the word 'deputy' is defined to be a person
appointed to act for another, a substitute, a
delegate, an agent. In the absence of any statutory
provision, the assistant never acts officially for
the principal. He is not required to be sworn, nor
to give bond. His capacity is more clerical than
otherwise, while a deputy has a more enlarged mean-
ing, and may do anything that his principal can do.
Our law authorizes and creates the office of deputy
sheriff and deputy clerk, and they are authorized
and empowered to do anything that can be done by
the principal."

In Pfeffer vs. Mahnke, 260 S. W. 1031, Commission
of Appeals, opinion adopted by the Supreme Court, we find
the following:

"It is observed that articles 4318 and 4343,
respectively, require that the secretary of state
and the comptroller shall each appoint a chief
clerk. It is not optional with either to appoint
or not appoint such chief clerk. The statute is
mandatory in providing for a chief clerk for each.
The offices of chief clerk of each is thus created
by statute. It is likewise observed that the
statutes provide that, in the absence of the sec-
retary of state, or his inability to act from any
cause, the chief clerk may perform all the duties
required by law of that officer, and that it shall
be the duty of the chief clerk of the comptroller
to discharge the duties of the comptroller when
he may be unavoidably absent or incapable from
sickness, or other causes, to discharge said du-
ties.

". . . The full authority of the chief clerks
thus to act arises from the acts of the Legislature

investing them with such authority when the con-
tingencies mentioned in the statutes arise. There
is no delegation of authority to the chief clerks
by the secretary of state and the comptroller. In
truth and in fact, the secretary of state and the
comptroller are impotent to prevent the chief
clerks from thus performing the duties of those
offices in the contingencies of the statutes
authorizing them to act. The chief clerks have the
same authority to perform the duties of those
offices in those contingencies that the secretary
of state and comptroller have to perform them at
all other times--the authority of the Legislature.
The chief clerks are public officers in the same
sense and created by the same legal authority as
other statutory officers of the state."

The Legislature having delegated to the State Auditor
the power to approve or reject the applications for rural aid,
and the First Assistant nowhere being given such power, we
are of the opinion that he may not act in such capacity.

What we have said above answers your third question
about as well as we can answer it. We would say that the
personnel of the office may proceed, under your supervision
in the making of audits, but official certification when and
if provided to be made by the State Auditor may not be affixed
by you. Such official acts should await the appointment and
qualification of a State Auditor.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED MAY 1, 1941

By

FIRST ASSISTANT
ATTORNEY GENERAL

Glenn R. Lewis
Assistant

GRL:lh

